UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>OMAR PEREZ-OCHOA,<br><br>Defendant. | 4:21-CR-40097-03-KES<br><br>ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL |

Defendant, Omar Perez-Ochoa, filed a Rule 29 motion for judgment of acquittal after a jury found him guilty on October 21, 2022, of one count of conspiracy to distribute a controlled substance and one count of conspiracy to launder monetary instruments, as charged in the superseding indictment. Dockets 290, 302. The United States opposes the motion. Docket 305. For the following reasons, the court denies Perez-Ochoa's motion.

## BACKGROUND

In a superseding indictment, a grand jury charged Perez-Ochoa with three counts: count one (1) conspiracy to distribute a controlled substance, count two (2) conspiracy to launder monetary instruments, and count three (3) conspiracy to distribute a controlled substance. Docket 245. The court severed count three (3) due to Perez-Ochoa's co-defendant having an insufficient connection to count three (3). Docket 276. Thus, a jury trial for Perez-Ochoa's

counts one (1) and two (2) began on October 18, 2022.[1] At the close of evidence, before the jury began deliberating, Perez-Ochoa made an oral motion for judgment of acquittal under Rule 29(a) of the Federal Rules of Criminal Procedure. Docket 286 at 3. The United States orally opposed the motion, and the court denied Perez-Ochoa's motion for judgment of acquittal. *Id.* The jury returned a verdict of guilty on both counts. Docket 290.

## DISCUSSION

### I. Legal Standard

Rule 29 allows convicted defendants to file a motion for judgment of acquittal after a jury returns its verdict. Fed. R. Crim. P. 29(c)(1). The jury verdict "must be upheld 'if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt.'" *United States v. Espinoza*, 885 F.3d 516, 520 (8th Cir. 2018) (quoting *United States v. Taylor*, 813 F.3d 1139, 1146 (8th Cir. 2016)). The Rule 29 standard is " 'very strict' and a jury's verdict should not be overturned lightly." *United States v. Boesen*, 491 F.3d 852, 855 (8th Cir. 2007) (quoting *United States v. Ellefson*, 419 F.3d 859, 862 (8th Cir. 2005)).

The essential elements of a crime for which a defendant is found guilty may be proven by circumstantial or direct evidence. *United States v. Baker*, 367 F.3d 790, 797 (8th Cir. 2004). "Th[e] court views the entire record in the light most favorable to the government, resolves all evidentiary conflicts accordingly,

---

[1] The Government has since moved to dismiss Perez-Ochoa's count 3 charge, and the court granted the motion. Dockets 307-08.

and accepts all reasonable inferences supporting the jury's verdict." *Boesen*, 491 F.3d at 856 (citing *United States v. Water*, 413 F.3d 812, 816 (8th Cir. 2005)). "[T]he district court is not to weigh the evidence or assess the credibility of witnesses[]" but rather is to evaluate the evidence in the light most favorable to the government to determine if a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Baker*, 367 F.3d at 797.

## II. Whether Sufficient Evidence Exists to Sustain the Guilty Verdicts

Count one (1) charged Perez-Ochoa with conspiracy to distribute a controlled substance involving 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Docket 245. To sustain a conviction, the United States had to prove beyond a reasonable doubt that there was an agreement to distribute a controlled substance, that Perez-Ochoa intentionally joined this agreement, and that at the time he did so, Perez-Ochoa knew the purpose of the agreement. *See United States v. Campbell*, 986 F.3d 782, 804 (8th Cir. 2021). The United States also had to prove beyond a reasonable doubt that the conspiracy involved more than 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

In his motion for judgement of acquittal, Perez-Ochoa argues that the government failed to produce sufficient evidence to prove the third element, namely that Perez-Ochoa knew the purpose of the agreement at the time that he joined. Docket 303 at 2-5. Perez-Ochoa further argues that the only direct evidence of Perez-Ochoa's knowledge of the conspiracy's purpose are his direct

3

statements, and that without corroborating evidence, the court must enter judgment of acquittal. *Id.* at 2-3.

Based on testimony from multiple witnesses and several exhibits, a reasonable jury could have found that Perez-Ochoa intentionally joined the agreement to distribute methamphetamine and that at the time he did so, he knew the purpose of the agreement. Agent Andrew Jacob testified that investigators found over 100 grams of methamphetamine in Perez-Ochoa's garage, and Perez-Ochoa admitted to knowing about this methamphetamine. A cooperating witness (CW) also identified Perez-Ochoa as involved in the methamphetamine conspiracy and testified that the CW had been in contact with Perez-Ochoa multiple times. The CW further testified that on one occasion, the CW delivered cash to Perez-Ochoa at the direction of someone else in the conspiracy, and the CW described Perez-Ochoa's location. On the second occasion, the CW testified that the CW met up with Perez-Ochoa at his home and that the CW dropped off a box containing three pounds of methamphetamine to Perez-Ochoa.

Law enforcement officers corroborated the CW's testimony by observing the CW drop a box off to a male at Perez-Ochoa's residence. Furthermore, Agent Scherer testified that law enforcement monitored a phone conversation between the CW and Perez-Ochoa. During this phone call, the CW told Perez-Ochoa that they had something to drop off to Perez-Ochoa, to which Perez-Ochoa responded "how many?" The CW responded by asking how many Perez-Ochoa wanted, and Perez-Ochoa responded he wanted three. Finally, Exhibit

4

35, which includes screenshots of text messages between the CW and an individual named "El Pariente" indicate that both the CW and El Pariente discussed having the CW drop off drugs at Omar's, and that Omar had also been in contact with El Pariente about the transaction. Docket 301 at 169-71, 173-77. Exhibit 51 also contains a conversation between the CW and El Pariente, in which the CW confirmed that the CW dropped off the "Units" at Omar's house. *See id.* at 210, 213-15.

Furthermore, Agent Scherer testified that Perez-Ochoa, in response to Agent Scherer's question of why someone would drop methamphetamine off to Perez-Ochoa, said that he (Perez-Ochoa) was the one who sends the money. In summary, there is sufficient evidence in the record to support a jury's verdict on count one (1) that Perez-Ochoa knew of the purpose of the agreement—to distribute methamphetamine—at the time he entered it.

With respect to count two (2), the United States had to prove that the there was an agreement to commit the crime of money laundering, that Perez-Ochoa intentionally joined this agreement, and that at the time he did so, Perez-Ochoa knew the purpose of the agreement. *See United States v. Slagg*, 651 F.3d 832, 844 (8th Cir. 2011); Model Crim. Jury Instr. 8th Cir. 6.18.1956K (2021). The United States must also show that one of the conspirators committed an overt act in furtherance of the conspiracy. *United States v. Delgado*, 653 F.3d 729, 737 (8th Cir. 2011) (quoting *United States v. Pizano*, 421 F.3d 707, 725 (8th Cir. 2005)). "The agreement need not be formal, and

'the government may prove the agreement wholly by circumstantial evidence or by inference from the actions of the parties.' " *Id.*

Perez-Ochoa argues that the witness testimony and exhibits presented at trial were "silent" regarding his understanding of the conspiracy. Docket 303 at 4. Here, viewing the evidence in the light most favorable to the verdict, a jury could find that Perez-Ochoa knew about the agreement and purposefully entered the agreement with this knowledge. For example, Perez-Ochoa said that he was "the guy who sends the money." There is evidence that Perez-Ochoa wired the money, or had others do so for him, such as his wife and parents-in law, in order to further the drug trafficking scheme. Agent Corey Vickery testified that Perez-Ochoa and his family members had wired over $35,000 to recipients in Mexico between November 2020 and May 2021. Perez-Ochoa also told Agent Scherer that he knew that the money he wired came from methamphetamine sales.

Furthermore, as discussed above, the fact that investigators found the methamphetamine in Perez-Ochoa's garage, the CW's testimony, and the text messages in exhibits 35 and 51 all demonstrate that a reasonable juror could conclude that Perez-Ochoa joined in the agreement to launder money and knew of its purpose. Agent Scherer also testified that Perez-Ochoa accepted delivery of nearly $20,000 in cash at his residence as part of a controlled delivery operation with the CW. After Agent Scherer questioned Perez-Ochoa about this event, Perez-Ochoa admitted that he planned to count the money and send the money on as instructed. All of this evidence shows that there is sufficient

6

evidence for a jury to find that Perez-Ochoa knew that the purpose of the conspiracy was to facilitate the money from drug sales in order to promote future sales. There is sufficient evidence to support the jury's verdict in count two (2).

## CONCLUSION

Defendant's Rule 29 motion is denied. A reasonable jury could have found Perez-Ochoa guilty on both counts beyond a reasonable doubt based on the evidence presented at trial. Thus, it is

ORDERED that defendant's Rule 29 motion (Docket 302) is denied.

Dated January 4, 2023.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE